*892 OPINION OF THE COURT
Lee L. Holzman, J.
In this SCPA 2103 discovery proceeding, respondents, the two principals in a law firm, move under CPLR 3211 to dismiss the petition seeking damages against them for their alleged legal malpractice. The discovery petition alleges that decedent and her postdeceased husband Anthony had told movants that they had agreed not to revoke their wills and that the essentially reciprocal wills movants drafted for them, which were executed on May 25, 1983, failed to include the language required to make this agreement enforceable (see, EPTL 13-2.1 [b] [eff Sept. 1, 1983]; 1983 Report of NY Law Rev Commn, 1983 Legis Doc No. 65[D], reprinted in 1983 McKinney’s Session Laws of NY, at 2251-2255 [for a history of the case law prior to that date]).
Decedent died on October 22, 1992 and her will executed on May 25, 1983 was admitted to probate. Inasmuch as one of the movants became the successor executor of decedent’s estate, replacing Anthony after he died, one of decedent’s nephews (hereinafter the administrator), a residuary legatee named in the will, petitioned for and received limited and restricted letters of administration pursuant to SCPA 702 (9) so that he might commence this discovery proceeding against movants. Although several reasons have been advanced by movants for the dismissal of the petition, the primary ground is that the lack of privity between any legatee under decedent’s will and the movants precludes the legatees from recovering damages based upon movants’ alleged malpractice in rendering legal services to decedent in the drafting of her will.
Under the 1983 wills drafted for decedent and Anthony, after the death of the second spouse, almost 100% of both spouses’ estates would have passed 50% to decedent’s five nieces and nephews and 50% to Anthony’s four children from a prior marriage. The discovery petition alleges that, after decedent’s death, movants drafted a new will for Anthony which he executed on February 8, 1993. Under this will, one of the movants was nominated as the executor, the first $1,600,000 of the estate was bequeathed to Anthony’s children and only 20% of the residuary estate was bequeathed to four of decedent’s nieces and nephews. Anthony died on May 27, 1993 and his will executed on February 8, 1993 has been admitted to probate. It appears that decedent’s estate has an approximate value of $425,000 and that Anthony’s estate has an approximate value of at least $2,000,000.
*893 To the extent that the administrator, on behalf of the legatees under decedent’s will, seeks damages arising from the alleged malpractice of movants in drafting either or both decedent’s and her postdeceased husband’s will, the petition fails to state a legally cognizable cause of action under the long line of cases decided prior to 1992. These cases hold that absent fraud, collusion, malicious acts or other special circumstances, attorneys are not liable to third parties, not in privity, for damages arising from their alleged malpractice in rendering legal services in connection with the wills of deceased clients, regardless of whether the malpractice consisted of inartful drafting of the will or not properly supervising its execution (Mali v De Forest & Duer, 160 AD2d 297, Iv denied 76 NY2d 710 [alleged legal malpractice consisted of a failure to inform a beneficiary of the estate of a tax-saving device that had been suggested to decedent but not included in his will]; Estate of Spivey v Pulley, 138 AD2d 563 [alleged legal malpractice consisted of permitting a legatee under the will to act as an attesting witness which resulted in the forfeiture of her legacy when her testimony was required to probate the will]; Viscardi v Lerner, 125 AD2d 662 [alleged legal malpractice consisted of using the word "intestate” share to describe the bequest to decedent’s spouse under the will instead of the word "elective” share which resulted in the spouse receiving the entire estate]; Rossi v Boehner, 116 AD2d 636 [alleged legal malpractice not set forth in detail in the decision but it appears to have been the failure to prepare a new will or codicil to name a new beneficiary]; Deeb v Johnson, 145 Misc 2d 942, affd 170 AD2d 865 [alleged legal malpractice consisted of failing to properly draft marital deduction provision with the result that the bequest was subject to an estate tax]; Victor v Goldman, 74 Misc 2d 685, affd 43 AD2d 1021 [alleged legal malpractice consisted of failing to prepare a new will for decedent in accordance with decedent’s request that plaintiff be granted a right of first refusal to purchase realty]; Maneri v Amodeo, 38 Misc 2d 190 [alleged legal malpractice consisted of failing to prepare a residuary clause as instructed by decedent who could not read English and who had been told by the attorney that the will had been prepared as instructed]). Some of the cases appear to indicate that the privity requirement had been eroded to a limited extent to permit recovery by third parties for the malpractice of accountants or other professionals but that lack of privity was an absolute bar to recovery against attorneys absent fraud, collusion, malicious acts, or other special circum *894 stances. However, in 1992, the Court of Appeals in Prudential Ins. Co. v Dewey, Ballantine, Bushby, Palmer & Wood (80 NY2d 377) held that the same test should be applied in determining attorneys’ liability to parties other than their clients as is used with regard to all other professionals. Thus, the issue is whether the Prudential case signaled a change in the law so that movants can now be held liable to beneficiaries of decedent’s estate in the event that the allegations in the petition as to their alleged malpractice in the drafting of her will can be established.
Prudential (supra) involved an opinion letter that counsel had furnished for a client seeking to restructure its debt to plaintiff, a creditor, containing an assurance that mortgage documents that were to be recorded in connection with the transaction represented binding obligations of its client. Notwithstanding that the defendants in many of the prior cases addressing professional liability to third parties were accountants, the court noted that "attorneys, like other professionals, may be held liable for economic injury arising from negligent representation” (80 NY2d, at 381). The Court stated that a cause of action for a loss arising from a professional negligent misrepresentation is limited to those situations where "there was either actual privity of contract between the parties or a relationship so close as to approach that of privity” because any other rule would unfairly impose "limitless liability” without any "manageable bounds” (80 NY2d, at 382). Although the Court found that the complaint stated a cause of action against the defendant attorney because it met the three-pronged test of (1) the awareness of the defendant that its statements would be used for a particular purpose, (2) that the plaintiff was a known party who would rely on the statements in furtherance of that purpose, and (3) that the defendant had engaged in conduct linking it to the plaintiff (supplying the letter directly to it), the Court nevertheless held that plaintiff had failed to establish that defendant had in fact made any misrepresentations. Consequently, summary judgment was granted in favor of the defendant.
To date, New York has been more reluctant than most jurisdictions to hold attorneys liable to anyone after their client’s death for their alleged negligence with regard to improper attestation or drafting of a will. Most jurisdictions addressing the issue have held attorneys liable to intended beneficiaries where the will was invalidated because of improper attestation or where the attorney conceded negli *895 gence in the omission of a clause for an intended beneficiary (61 ALR4th 464, §§ 2, 8, 10, 11). However, the same authority indicates that the majority rule is either that no cause of action has been stated or that the proof required to support the cause of action must be excluded where the attorney does not concede negligence in drafting the will and it is not apparent from the will itself that the plaintiff was an intended beneficiary or that the will fails to reflect decedent’s intentions. Where liability has been imposed, some courts have used a third-party beneficiary analysis, others have stated that an attorney who undertakes to fulfill the testamentary scheme of the client assumes a relationship with the client’s intended beneficiary, while others have employed the "California” balancing test of several factors, including the foreseeability of the harm to plaintiff, the extent of the damages, the moral turpitude of the conduct, and the likelihood that imposing liability would prevent future similar conduct (61 ALR4th 615, §§ 11-13).
Inasmuch as Prudential Ins. Co. v Dewey, Ballantine, Bushby, Palmer & Wood (supra) neither analyzed nor cited any case involving drafting or supervising the execution of a will, its value as a precedent in this proceeding is limited to its holdings that attorneys, as is the case with other professionals, may be held liable to third parties for legal malpractice under limited circumstances approaching privity between the parties. In drafting a will or supervising its execution, an attorney will rarely have any direct communication with any of the future intended beneficiaries of the estate in the performance of those duties (cf., Estate of Spivey v Pulley, supra). Thus, if liability is to be imposed in these types of cases, instead of using the "relationship approaching privity test” used in the opinion letter cases as the basis for permitting a recovery by third parties, it might be more appropriate to utilize a third-party beneficiary rationale or to hold that counsel assumed a duty to those embraced within the client’s testamentary scheme.
If the instant case involved malpractice with regard to the statutory formalities required by EPTL 3-2.1, or in permitting a legatee named in a will drafted by counsel to act as an attesting witness thereto without advising the testator or the legatee that this might result in a forfeiture of the legacy under EPTL 3-3.2, or perhaps even where the attorney conceded or it is self-evident from the will itself that the attorney failed to draft a provision favoring an identified beneficiary, this court would seriously consider whether Prudential Ins. Co. v Dewey, Bal *896 lantine, Bushby, Palmer & Wood (supra) was a beacon provided by the Court of Appeals to the courts below that New York is now ready to follow the majority rule that a viable cause of action is stated against an attorney under these circumstances. However, there is no language in Prudential which indicates that the Court of Appeals has signaled the courts below that New York is to leapfrog from being one of the most restrictive States in permitting beneficiaries of estates to recover for errors by attorneys in drafting decedents’ wills to one of the most liberal. There does not appear to be any reported case in which a third party ultimately prevailed where, as here, the alleged malpractice is not self-evident within the four corners of the will and the attorney denies that the will fails to reflect the decedent’s testamentary instructions.
Accordingly, it is concluded that there is no precedent in this jurisdiction which warrants a trial court holding that the instant petition states a viable cause of action on behalf of decedent’s nieces and nephews for the alleged malpractice of movants in the drafting of decedent’s will. In reaching this conclusion, the court is mindful of the need to distinguish between whether a cause of action should be recognized and the proof that will be required to sustain the action. Nevertheless, if it is envisioned that claims similar to the one advanced in this proceeding would, in the overwhelming majority of cases, not only be based upon no more than the disappointment of those who deem themselves worthy heirs, but would also require testimony as to alleged instructions given by decedent to counsel to assist in the preparation of the will while the same proof would be insufficient to either admit an oral will to probate or support a particular construction of the will, it might be concluded that such claims should not be recognized as stating a valid cause of action.
The instant petition cannot be viewed more favorably because it was commenced by decedent’s nephew in his capacity as the limited administrator of decedent’s estate instead of individually as an intended beneficiary who suffered a loss as a result of movants’ alleged negligent representation of decedent (Deeb v Johnson, supra; Estate of Spivey v Pulley, supra). The privity requirement would be rendered meaningless if it could be circumvented by the simple device of having a fiduciary appointed for the estate of the deceased client who would then commence the proceeding against the attorney on behalf of all, or some, of the beneficiaries of the estate. The gravamen of the action is not to recover for damages suffered by decedent. No *897 party suffered damages while decedent was alive inasmuch as her will did not speak until her death and, therefore, any malpractice in its drafting could have been corrected prior to her death.
For the reasons stated above, the motion to dismiss the petition is granted on the grounds that it fails to state, or establish the existence of a cause of action on behalf of the fiduciary of decedent’s estate against movants.